# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAHEEN THOMAS, | No. 4:16-CV-01487 |
| Plaintiff, | (Judge Brann) |
| v. | (Magistrate Judge Saporito) |
| ERIC TICE, MARK GARMAN, TIMOTHY MILLER, HEATHER HALDEMAN, | |
| Defendants. | |

## MEMORANDUM OPINION

**MARCH 12, 2018**

Before the Court for disposition is Defendants Eric Tice, Mark Garman, Timothy Miller, and Heather Haldeman's Motion for Summary Judgment. Magistrate Judge Joseph F. Saporito, Jr. has prepared a Report and Recommendation advising that this motion be denied. For the following reasons, this Report and Recommendation will be rejected, and Defendants' Motion for Summary Judgment will be granted for lack of personal involvement.

## I. BACKGROUND[1]

Plaintiff Briaheen Thomas ("Plaintiff") was, at all times pertinent to this action, an inmate in the custody of the Pennsylvania Department of Corrections

---

[1] When considering a motion for summary judgment, this Court considers undisputed facts, resolves factual disputes in favor of the non-moving party, and draws all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). For purposes of this section, the non-moving party is Plaintiff Briaheen Thomas.

housed at SCI-Rockview.[2] On May 31, 2015, Plaintiff was visiting with a friend in the visiting room of the institution when Correctional Officer Walls approached and handcuffed him.[3] During a subsequent conversation with Department of Corrections staff, Plaintiff learned that he was removed from the visiting area and was being detained because he had been observed swallowing drugs given by his visitor.[4] Plaintiff denies ingesting drugs, and instead avers that he was observed drinking soda and eating peanut M&Ms.[5]

Plaintiff was thereafter placed in administrative custody pursuant to ADM 802, Section 1.A.1.f., and taken to a "dry cell" without plumbing or running water.[6] DC-ADM 802 is the Department of Corrections policy on Administrative Custody.[7] Section 1.A.f. of that policy authorizes the assignment of an inmate to administrative custody "[if] the inmate has been charged with, or is under investigation for a violation of facility rules and there is a need for increased control pending disposition of charges or completion of the investigation."[8]

---

[2] ECF No. 19-1, Dep. of Briaheen Thomas, at 14:12-22.

[3] *Id.* at 38:1-9.

[4] *Id.* at 38:16-18.

[5] *Id.* at 40:19-25; 41:20.

[6] ECF No. 19-1, Dep. of Briaheen Thomas, at 67:10-16; Defs.' Statement of Material Facts (ECF No. 19) ¶ 15; Pl.'s Counter-statement of Material Facts (ECF No. 24) ¶ 15.

[7] *See* Defs.' Statement of Material Facts (ECF No. 19) ¶ 17; Pl.'s Counter-statement of Material Facts (ECF No. 24) ¶ 17.

[8] *See* Defs.' Statement of Material Facts (ECF No. 19) ¶ 18; Pl.'s Counter-statement of Material Facts (ECF No. 24) ¶ 18.

Confinement in administrative custody cannot exceed fifteen days, and an administrative hearing before the Program Review Committee ("PRC") must be conducted within seven days to afford the inmate a chance to respond, and to otherwise allow the PRC to determine if continued placement in administrative custody is warranted.[9]

Once placed in administrative custody, Plaintiff was stripped of his clothes, and given a smock to wear which, during his ten-day tenure in the dry cell, was not replaced.[10] He further avers that his mattress did not have a slip covering, sheet, blanket, or pillow.[11] Plaintiff was cold; however, despite several requests, he was not given a blanket.[12] This is in contravention of a Facility Security Policy No. 6.3.1.b(4) requiring that all inmates be issued a suicide blanket.

Throughout his imprisonment in the dry cell, Plaintiff further alleges that, despite his requests, he was not provided toilet issue, water to wash his hands, hand sanitizer, a shower, toothpaste, undergarments, or socks.[13] Again, this denial stands in contravention of Department of Corrections practice that toilet paper and sanitizing wipes be provided by corrections officers after the inmate uses the bed

---

[9] Defs.' Statement of Material Facts (ECF No. 19) ¶¶ 19-20; Pl.'s Counter-statement of Material Facts (ECF No. 24) ¶¶ 19-20.

[10] ECF No. 19-1, Dep. of Briaheen Thomas, at 69:7-13.

[11] *Id.* at 69:18-23.

[12] *Id.* at 70:1-14.

[13] *Id.* at 72:19-22; 74: 1-3; 75:3-5.

pan/urine bottle.[14] Furthermore, there was constant illumination in the cell during Plaintiff's inhabitancy.[15]

Plaintiff further describes being handcuffed to the metal frame of the bed for the duration of his confinement in the dry cell.[16] This handcuffing was done in such a way that his arm could not move and eventually went numb.[17] Plaintiff could not stand while handcuffed to the bed.[18] His right arm had nerve damage from a prior gunshot wound which he avers was exacerbated by the cuffing. He was, however, given pain medication when requested.[19]

Upon admission on May 31, 2015, Plaintiff was given a laxative to induce a bowel movement and hasten his exit from the dry cell.[20] From May 31, 2015 through June 1, 2015, Plaintiff had seven bowel movements.[21] No contraband was found in Plaintiff's excrement. An x-ray on June 1, 2015, however, indicated that a foreign body was present in Plaintiff's abdominal cavity.[22]

---

[14] Defs.' Statement of Material Facts (ECF No. 19) ¶¶ 42-44; Pl.'s Counter-statement of Material Facts (ECF No. 24) ¶¶ 42-44.

[15] ECF No. 19-1, Dep. of Briaheen Thomas, at 54:6-8.

[16] *Id.* at 55:7-8.

[17] *Id.* at 55:15-18.

[18] *Id.* at 78:20-22.

[19] *Id.* at 93:1-9.

[20] ECF No. 19-1, Dep. of Briaheen Thomas, at 80:19-23.

[21] *Id.* at 86:19-24.

[22] ECF No. 21-1, at 36.

On June 4, 2015, Defendants Eric Tice,[23] Mark Garman,[24] Timothy Miller,[25] Heather Haldeman[26] ("Defendants"), committee members of the Program Review Committee at SCI-Rockview, conducted a hearing to determine the appropriateness of continued administrative custody.[27] Defendants opted to continue Plaintiff's administrative custody.[28] Plaintiff remained housed in the dry cell for an additional five days, and had five more bowel movements.[29] Plaintiff was released from the dry cell on June 9, 2015.

This action was instituted pursuant to 42 U.S.C. § 1983 and Eighth Amendment to the United States Constitution on July 20, 2016.[30] Following discovery, Defendants filed a Motion for Summary Judgment on May 30, 2017,[31]

---

[23] Defendant Tice was Deputy Superintendent for Facilities Management at SCI-Rockview during the pertinent time period. Defs.' Statement of Material Facts (ECF No. 19) ¶ 3; Pl.'s Counter-statement of Material Facts (ECF No. 24) ¶ 3.

[24] Defendant Garman was Deputy Superintendent for Centralized Services at SCI-Rockview during the pertinent time period. Defs.' Statement of Material Facts (ECF No. 19) ¶ 4; Pl.'s Counter-statement of Material Facts (ECF No. 24) ¶ 4.

[25] Defendant Miller was the Corrections Classification Program Manager at SCI-Rockview during the pertinent time period. Defs.' Statement of Material Facts (ECF No. 19) ¶ 5; Pl.'s Counter-statement of Material Facts (ECF No. 24) ¶ 5.

[26] Defendant Haldeman was Major of Unit Management at SCI-Rockview. Defs.' Statement of Material Facts (ECF No. 19) ¶ 6; Pl.'s Counter-statement of Material Facts (ECF No. 24) ¶ 6.

[27] Defs.' Statement of Material Facts (ECF No. 19) ¶¶ 22-23.

[28] *Id.* ¶ 24.

[29] *See* ECF No. 23, at 32-44.

[30] ECF No. 1.

[31] ECF No. 17.

which Magistrate Judge Saporito recommended denying.[32] Defendants have since filed objections.[33] These objections have been fully briefed, and the matter is now ripe for disposition.[34]

## II. LAW

### A. Report and Recommendation

Upon designation, a magistrate judge may "conduct hearings, including evidentiary hearings, and . . . submit to a judge of the court proposed findings of fact and recommendations."[35] Once filed, this Report and Recommendation is disseminated to the parties in the case who then have the opportunity to file written objections.[36] When objections are timely filed, the District Court must conduct a *de novo* review of those portions of the report to which objections are made.[37] Although the standard of review for objections is *de novo*, the extent of review lies within the discretion of the District Court, and the court may otherwise rely on the recommendations of the magistrate judge to the extent it deems proper.[38]

---

[32] ECF No. 26.
[33] ECF No. 27.
[34] ECF Nos. 28 & 29.
[35] 28 U.S.C. § 636(b)(1)(B).
[36] 28 U.S.C. § 636(b)(1).
[37] 28 U.S.C. § 636(b)(1); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011).
[38] *Rieder v. Apfel*, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (citing *United States v. Raddatz*, 447 U.S. 667, 676 (1980)).

For portions of the Report and Recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."[39] Regardless of whether timely objections are made by a party, the District Court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.[40]

### B. Summary Judgment

Summary judgment is granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[41] A dispute is "genuine if a reasonable trier-of-fact could find in favor of the non-movant," and "material if it could affect the outcome of the case."[42] To defeat a motion for summary judgment, then, the nonmoving party must point to evidence in the record that would allow a jury to rule in that party's

---

[39] Fed. R. Civ. P. 72(b), advisory committee notes; *see also Univac Dental Co. v. Dentsply Intern., Inc.*, 702 F.Supp.2d 465, 469 (M.D.Pa. 2010) (citing *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987)) (explaining that judges should give some review to every report and recommendation).

[40] 28 U.S.C. § 636(b)(1); Local Rule 72.31.

[41] Federal Rule of Civil Procedure 56(a).

[42] *Lichtenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294, 300 (3rd Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 252 (1986)).

favor.⁴³ When deciding whether to grant summary judgment, a court should draw all reasonable inferences in favor of the non-moving party.⁴⁴

## III. ANALYSIS

In this matter, Plaintiff brings a claim under 42 U.S.C. § 1983 ("Section 1983") alleging that his Eighth Amendment right against cruel and unusual punishment was violated by Defendants. Section 1983 is not a source of substantive rights; rather, it merely provides a remedy for violations of constitutional rights.⁴⁵ To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the complainant of rights secured under the Constitution or federal law.⁴⁶

Here, the parties seemingly concede that, to the extent they were personally involved, Defendants were acting under color of law at all pertinent times. They instead focus their disagreement on whether a reasonable jury could find their conduct to be constitutionally violative. In his Report and Recommendation, Magistrate Judge Saporito advised that Defendants' Motion for Summary

---

⁴³ Federal Rule of Civil Procedure 56(c)(1); *Liberty Lobby*, 477 U.S. at 249.

⁴⁴ *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

⁴⁵ *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 815 (1985).

⁴⁶ *See Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 590 (3d Cir. 1998).

Judgment should be denied because the totality of circumstances demonstrates a genuine dispute of material fact precluding summary judgment, Defendants were personally involved in the alleged violative conduct, and Defendants are not entitled to qualified immunity.[47] Defendants have since filed objections arguing that (1) the Report does not comport with legal precedent, (2) the duration of Plaintiff's confinement was reasonable, (3) the conditions of Plaintiff's confinement do not amount to cruel and unusual punishment, (4) the evidence does not demonstrate Defendants' personal involvement, and (5) Defendants are entitled to qualified immunity.[48] Having afforded *de novo* review to the portions of the Report and Recommendation implicated by these Objections, I find Defendants personal involvement in the instant alleged constitutional violation to be lacking. I therefore respectfully disagree with the recommendation of my colleague. My reasoning is as follows.

The Eighth Amendment prohibits cruel and unusual punishment and imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care, and personal safety.[49] While it is well settled that prison conditions constitute cruel and unusual punishment if they result in serious deprivations of basic human needs, the Eighth

---

[47] *See generally* Report and Recommendation (ECF No. 26).

[48] *See* Objection to the Report and Recommendation (ECF No. 27).

[49] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

Amendment does not mandate comfortable prisons.[50] Rather, in order to properly implicate the Eighth Amendment, the Supreme Court has held that a condition of confinement claim against a prison official must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind."[51]

The first element is satisfied when an inmate is deprived of "the minimal civilized measure of life's necessities."[52] In the instant matter, Magistrate Judge Saporito began his analysis by noting, and I concur, that the use of a segregated housing arrangement does not, in itself, offend the Eighth Amendment.[53] Indeed, segregated housing crosses the threshold of cruel and unusual punishment only when the conditions of confinement are "foul, inhuman or totally without penological justification."[54] In making this determination, both the duration and conditions of segregated confinement must be considered.[55]

In his Report and Recommendation, Magistrate Judge Saporito found that the "totality of circumstances" demonstrates a genuine dispute of material fact precluding summary judgment on Plaintiff's Eighth Amendment claim.

---

[50] *Tillman v. Lebanon Cnty. Corr.Facility*, 221 F.3d 410 (3d Cir. 2000); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

[51] *Farmer*, 511 U.S. at 834.

[52] *Rhodes*, 452 U.S. at 347.

[53] *See Gilblom v. Gillipsie*, 435 F. App'x. 165, 168 (3d Cir. 2011).

[54] *Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1992).

[55] *Id.* (citing *Hutto v. Finney*, 437 U.S. 678, 685 (1978)).

Defendants object to this conclusion arguing, in pertinent part, that, even accepting the veracity of Plaintiff's assertions concerning the conditions of his confinement falling below DOC regulations, the evidence of record does not demonstrate their personal involvement and knowledge of these alleged deviations.[56] I am in agreement with this contention.

Liability against a defendant in a civil rights action cannot be premised on a theory of *respondeat superior*, or mere hypotheses that an individual defendant may have had knowledge of or personal involvement.[57] Rather, each named defendant must be shown to have been personally involved in the events or occurrences which underlie a claim.[58] Indeed, as aptly described in *Rode v. Dellarciprete*:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.[59]

Defendants here argue that the factual record does not demonstrate such involvement, and that the Report and Recommendation therefore erred in finding

---

[56] Report and Recommendation (ECF No. 28) at 11.

[57] *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)); *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003).

[58] *See Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir. 1976).

[59] *Rode*, 845 F.2d at 1207.

personal involvement. As noted above, Defendants are committee members of the Program Review Committee at SCI-Rockview. In that capacity, they did not make the determination to send Plaintiff to the dry cell,[60] nor did they oversee the conditions of that confinement from May 31, 2015 through June 9, 2015. Rather, their involvement was limited to determining, on June 4, 2015, whether continued administrative custody was necessary to ensure the gastrointestinal passage of the suspected contraband. This limited role at the June 4, 2015 hearing is insufficient for a reasonable juror to find personal involvement in the conditions of confinement alleged to be constitutionally violative.

First, Plaintiff complains that the conditions of confinement violated the Eighth Amendment because he was denied basic necessities of life in the form of access to water to wash his hands, toilet paper, a blanket, an opportunity to brush his teeth, and an opportunity to shower. However, even assuming the veracity of these allegations by Plaintiff, he has nevertheless failed to establish that the named Defendants personally denied him access to these products.[61] Furthermore, when present before Defendants on June 4, 2015 for his administrative custody hearing, Plaintiff did not complain of these deficiencies or denials by correction staff

---

[60] ECF No. 19-1, Dep. of Briaheen Thomas, at 120:8-13.
[61] *Id.* at 120:18-121:16.

overseeing his confinement. Instead, Plaintiff admitted in his deposition the following:

> Q. During that time when the PRC was there, ---
>
> A. Yes.
>
> Q. --- did you speak to any of them about your request for - - - to wash your hands or for a shower, for soap? Did any of that get discussed with the PRC?
>
> A. No
>
> I was trying to get out there.
>
> Q. Okay.
>
> A. I wasn't trying to stay there and to wash my hands there. I was trying to get out of there.[62]

As previously noted, the Third Circuit wrote in *Young v. Quinlan*, the seminal case within this Circuit addressing challenges within a dry cell, that "the duration and conditions of segregated confinement must be considered" in determining whether such confinement passes constitutional muster.[63] Here, in absence of evidence that Defendants were made aware of conditions of confinement which are contrary to DOC policy, they lack the personal involvement necessary to sustain this suit. Indeed, in accord with the above consideration outline by *Young*, Defendants controlled, at most, whether Plaintiff would remain

---

[62] *Id.* at 105: 6-15.

[63] *Young*, 960 F.2d at 364.

confined after June 4, 2015. Damningly for Plaintiff, their lack of knowledge of conditions at odds with DOC policy precludes any liability as defendants.[64]

In the Report and Recommendation, Magistrate Judge Saporito focuses his analysis on the failures of the PRC, or Defendants, to adhere to the mandates of the Department of Corrections Administrative Custody Procedures Manual in conducting the June 4, 2015 hearing.[65] Such a violation, however, does not equate to a violation or the Constitution,[66] nor does it serve to convey upon Defendants knowledge of the alleged deviations of Plaintiff's confinement.

While the June 4, 2015 hearing was sufficient for Plaintiff to discuss the conditions of his confinement and thus bring Defendants within the ambit of this suit, the undisputed evidence, as cited above, reveals the lack of such an occurrence and knowledge of such conditions. Therefore, finding no personal

---

[64] *Cf. Young*, 960 F.2d at 365 (finding that Lewisburg prison officials were deliberately indifferent to Young's requests where they had adduced no evidence to rebut Young's allegation that prison officials were aware of his confinement to a dry cell, that they intentionally placed him in such a cell with full knowledge of his poor physical condition, and that once in the dry cell, the officials obdurately refused to allow him to relieve himself with dignity, let alone adequate sanitation); *see also Gilblom*, 435 F.App'x at 169 (affirming summary judgment in favor of two corrections officers directly involved and with personal involvement in Plaintiff's confinement in dry cell); *Daniels v. Pitkin*, No. 14-CV-2383, 2017 WL 890090, at *3-4 (M.D.Pa. Mar. 6, 2017)(Conaboy, J.)(granting summary judgment in favor of Defendants who, while knowing of Daniels' dry cell placement, were unaware of his claims that he was not being allowed to wash his hands after urinating and defecating or of his concerns that urine and fecal matter was accumulating on his person, smock, and bedding).

[65] *See* Report and Recommendation (ECF No. 28) at 15-18.

[66] *See Williams v. Varano*, No. 12-CV-529, 2015 WL 1470763, at *6 (M.D.Pa. Mar. 31, 2015)(Conaboy, J.).

involvement of Defendants in the cited conditions of confinement, summary judgment in Defendants' favor is appropriate here.

Furthermore, to the extent that Defendants knew, by virtue of their supervisory role, of conditions inherent to dry cell confinement (and pursuant to DOC policy) such as the handcuffing, denial of showers,[67] and constant illumination,[68] they are entitled to qualified immunity for any constitutional violation suffered. In *Saucier v. Katz*, the Supreme Court of the United States established a two-step process for resolving claims of qualified immunity: "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."[69] The court is permitted to exercise its discretion in deciding which of the two prongs of the qualified-immunity analysis should be addressed first in light of the circumstances of the particular case.[70]

Defendants may therefore be entitled to qualified immunity in this case if they can establish that the right at issue was not clearly established at the time of

---

[67] *See Daniels*, 2017 WL 890090, at *5 (collecting cases).

[68] *Id.*

[69] *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 534 U.S. 194, 201 (2001)).

[70] *Id.* at 236.

their conduct. Pertinently, in *Mullenix v. Luna*, a November 2015 decision, the Supreme Court emphasized as follows:

> We have repeatedly told courts . . . not to define clearly established law at a high level of generality. The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.[71]

Here, without deciding whether the conditions of a dry cell as imposed pursuant to DOC policy violate the Eighth Amendment,[72] the Court nevertheless finds that the right to be free from such conditions was not clearly established. Indeed, while our Court of Appeals has previously addressed issues involving the use of dry cells, they have presented both disparate factual circumstances and outcomes insufficient to provide fair warning to Defendants that the DOC policy *per se* was unconstitutional.

For example, in *Young v. Quinlan*, the Third Circuit reversed the District Court, which granted summary judgment for the defendant on a plaintiff's claims regarding the conditions of his confinement.[73] In that case, as punishment for flooding his cell, the plaintiff was placed in a dry cell without a toilet or running

---

[71] 136 S. Ct. 305, 308 (2015) (internal citations and quotation marks omitted).

[72] *See Reichle v. Howards*, 566 U.S. 658, 664 (2012) (explaining that a court "may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all" to avoid deciding constitutional questions unnecessarily).

[73] *Young*, 960 F.2d at 353.

water for ninety-six hours.[74] In addition, he was not provided with toilet paper, and was forced to defecate and urinate throughout his cell without the benefit of a urinal.[75] It was only after twenty-nine hours that the plaintiff was finally provided with a urinal and allowed to leave his cell to defecate.[76] Noting that "the touchstone [of the constitutional analysis] is the health of the inmate," the Third Circuit determined that the conditions of the plaintiff's confinement worked a deprivation of the basic necessities of human existence and thus were sufficient to satisfy the objective prong of the analysis.[77] In reaching this conclusion, our Court of Appeals noted that the conditions alleged were made all the more revolting because the plaintiff was HIV positive, and was more susceptible to infection and disease.[78]

A disparate result was reached in *Gilblom v. Gillipsie*.[79] In that case, the plaintiff similarly asserted an Eighth Amendment claim based on his confinement in a dry cell.[80] The plaintiff in *Gilblom* specifically alleged that, due to his placement in a dry cell for suspicion of ingesting contraband, he was in close

---

[74] *Id.*

[75] *Id.*

[76] *Id.*

[77] *Id.* at 364.

[78] *Id.*

[79] 435 F. App'x. 165, 166-67 (3d Cir. 2011)(non-precedential).

[80] *Id.*

proximity to his own excrement for thirty-six hours.[81]  Furthermore, owing to the refusal of defendant correction officers, plaintiff was forced to search his own excrement for evidence of contraband.[82]  While noting that the circumstances of the plaintiff's placement were "unsettling," the Third Circuit nevertheless held that the plaintiff's placement in a dry cell was not, "in and of itself, problematic."[83]  In fact, given the prison's interest in maintaining institutional security and internal order, the Third Circuit wrote that the need to ensure that contraband would not be brought into the prison certainly justified this placement.[84]

The above cases, presenting significantly more egregious circumstances, fail to reveal an invalidation per se of the use of a dry cell and the governing DOC policies.  Given that Defendants lacked personal knowledge of the alleged conditions deviating from DOC policy, I find that this lack of "applicable precedent from the Supreme Court" or "a robust consensus of cases of persuasive authority in the Courts of Appeals"[85] invalidating the use of dry cells *per se* is determinative.  Consequently, to the extent Defendants had knowledge of DOC policy concerning the use of dry cells, it was reasonable for them to believe that

---

[81] *Id.*

[82] *Id.*

[83] *Id.* at 168.

[84] *Id.* at 169.

[85] *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 639 (3d Cir. 2015), *cert. denied sub nom. Spady v. Rodgers*, 136 S. Ct. 1162 (2016).

their conduct was lawful. They are therefore entitled to qualified immunity, and summary judgment is appropriate on this alternate ground.[86]

## IV. CONCLUSION

Based on the above reasoning, Magistrate Judge Saporito's Report and Recommendation is respectfully rejected, and Defendants' Motion for Summary Judgment is granted.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[86] In his Report and Recommendation, Magistrate Judge Saporito cites the Supreme Court case of *Hope v. Pelzer*, 536 U.S. 730 (2002) and related cases concerning the prolonged handcuffing of prisoners to show that the law was sufficiently clear to Defendants that their prolonged use of handcuffs behavior was unconstitutional. *See* Report and Recommendation (ECF No. 26) at 21-23. Following my review of these cases, however, I respectfully disagree that *Hope* and the related cases reach the level of factual similarity so as to provide "fair warning" to Defendants. *See Hope*, 536 U.S. at 741 ("[T]he salient question that . . . ought to have asked is whether the state of the law . . . gave respondents fair warning that their alleged treatment of Hope was unconstitutional."). Here, the DOC policy governing dry cell confinement indicates that cuffs are removed every two hours for ten minutes of exercise, inmates are given the option of alternating wrists, and medical personnel inspect the restraints. *See* Defs.' Statement of Material Facts (ECF No. 19) ¶ 38; Pl.'s Counter-statement of Material Facts (ECF No. 24) ¶ 38. Plaintiff's Medical Records indicate that, at various times, he often took advantage of this option. *See* ECF No. 19-1, at 265–290.